**WALKER et al. v. FIELDS et al.    (No. 8355.)**

(Court of Civil Appeals of Texas. Dallas. March 20, 1920. Rehearing Denied May 8, 1920.)

1. Wills ⬯146—Manner of execution and proof of nuncupative will stated.

Vernon's Sayles' Ann. Civ. St. 1914, arts. 3269, 3270, 7861, 7863, relating to the execution and proof of nuncupative wills, not providing who shall commit the testimony of the attesting witness to writing or its manner or form, the procedure may be informal so long as it observes the essential requirements of the law, and the testimony as reduced to writing will be sufficient if it contains all the requirements of a nuncupative will, as the testamentary words, that they were uttered while the testator was in extremis and that he called upon those present to bear witness to his disposition; it being also proper to include the fact that testator dies at his habitation, etc., and to show who was present and heard the words.

2. Wills ⬯146—Nuncupative wills reduced to writing must be signed or assented to by all the witnesses.

Under Vernon's Sayles' Ann. Civ. St. 1914, arts. 3269, 3270, 7861, 7863, relating to the manner of execution and proof of nuncupative wills, it is not sufficient that one or even two of the witnesses to the testator's verbal disposition set down the testament; it being necessary that each of the witnesses sign, read, assent, or agree to what is written, notwithstanding article 5502, permitting the exercise of joint authority by the majority of those upon whom it is conferred.

Appeal from District Court, Kaufman County; Joel R. Bond, Judge.

Proceeding by Brock Walker and another to probate the will of S. F. Walker, deceased, against Ola Fields and others. Decree for contestants, and proponents appeal. Affirmed.

Lee R. Stroud, of Kaufman, for appellants.
Wynne & Wynne, of Kaufman, for appellees.

RASBURY, J. This is an appeal from the action of the district judge directing a jury to return verdict refusing the application of appellants, Brock Walker and Fannie Rhodes, son and daughter respectively of S. F. Walker, to probate the alleged nuncupative will of the latter. Appellees, heirs of the deceased, contested the application in the probate court and on appeal to the district court.

The facts which form the basis for the court's action are not in dispute and are, in substance, these: S. F. Walker, the decedent, at his residence in Kaufman county in his last illness called his son, Brock Walker, his son-in-law, Oscar Marshall, C. H. Bodine, and Joe Wilson, to his bedside and informed them that for years he had been working and saving that his daughter and her two children might have something to live on after his death, and, being conscious of approaching death, for those present to bear witness that it was his will that his estate should pass to Fannie Rhodes and her two children; and that he desired his son, Brock, to take charge of his property and "see" that it went to Fannie and her two children. The morning following the nuncupation, Brock Walker reduced the declaration to writing, and within two or three days thereafter exhibited the written words to Oscar Marshall. Subsequently, and on March 8, 1918, Walker died leaving personal property of the probable value of $5,000.00. More than six months

from the time Walker uttered the testamentary words elapsed before the will was presented to the county judge for probate. Oscar Marshall on trial testified that the writing exhibited to him by Brock Walker was precisely what the decedent said in his last illness. The other witnesses, Bodine and Wilson, who were present when the decedent made the declaration, testified that what was written by Brock Walker was what the decedent declared, but that they did not join in the act, nor was it done in their behalf or at their request, nor were they advised that it had been done.

The judgment of the court and appellants' bill of exception reserving their objection to the court's peremptory direction of verdict recites, in substance, that there was no conflict in the evidence, but that it appeared therefrom that, while decedent's testamentary words were reduced to writing within the time required by law, the act was participated in by less than the required number of witnesses, as a consequence of which the court directed verdict refusing probate of the will. The action of the court in the respect stated is assigned as error, and presents the issue whether, when those called on to bear witness to the decedent's testamentary words, anticipating that his will may not be probated within six months thereafter, proceed to commit their testimony or its substance to writing, the three witnesses required to establish it must in some manner join in or assent thereto within the prescribed six days. We have reached the conclusion that such course is essential to the validity of the will. The articles of our statutes which regulate the making and admission to probate of nuncupative wills are substantial reproductions of English acts declared to be "for the prevention of fraudulent practices in setting up nuncupative wills, which have been the occasion of much perjury" (Schouler, Wills, Ex. & Ad. vol. 1, § 363 [5th Ed.]), and provide compositely that such wills shall not be probated or established (1) unless made in the decedent's last illness at his habitation or where he has resided 10 days preceding, except when he becomes sick from home and dies prior to returning to his habitation; (2) if the value of the estate shall exceed $30; (3) unless it be proved by three credible witnesses that the decedent called on some person to take notice or bear testimony to his words; (4) and not then if the testimony of the witnesses differ materially as to the testamentary words or as to the testator calling upon some one to witness same; (5) and no testimony shall be received, after the lapse of six months from the time of the utterance of the testamentary words, to prove a nuncupative will, unless the testimony or the substance thereof shall have been committed to writing within six days after utterance. Articles 3269, 3270, 7861, 7863, Vernon's Sayles' Tex. Civ. Stats.

[1] The provision which requires that the testimony or its substance shall be committed to writing within the six days is very general and contains only the bare provision recited. It is not provided who shall commit the testimony to writing, the manner or form it shall take, or its extent or substance. Obviously, in the absence of any stipulations in that respect the procedure may be informal as long as it can be said to have observed the essential requirements of the law. The testimony so reduced would be sufficient, perhaps, if it contained all the requirements of a nuncupative will, as the testamentary words, that they were uttered while the testator was in extremis, and that he called upon those present to bear witness to his disposition. Also it would be proper to include in such testimony the fact that the testator died at his habitation, etc., and to show who was present and heard the words, though we incline to the opinion that proof of those facts would otherwise be admissible. While it would not, in our opinion, do violence to the several provisions to hold that they contemplate that the testimony when reduced to writing should be subscribed by the required number of witnesses, since the most informal procedure would contemplate that much, yet because the proceeding is informal there is some force in the contention that it is not required. The preparation or writing of the testimony we are persuaded may be done by any one or all of the witnesses or under their direction by another. The writing down is manual and may be performed by any one selected for the purpose.

[2] We do not, however, believe that the several provisions contemplate that one or even two of the witnesses can set down the testament, for that is obviously what the testimony would in every case in substance be, and then long subsequent proof by others present that such testimony correctly represents what the testator said. The very purpose of the statute, which is to prevent fraud and secure the testimony while the transaction is fresh in the memory of those present, would be frustrated. Our laws regulating such dispositions are, as we have said, a reproduction of the English acts, said to have been enacted as the result of an attempt to establish a nuncupative will in the courts of that country "by the most frightful perjury and subornation of perjury." See note to Sykes v. Sykes, 20 Am. Dec. 44. It is to be remembered that the will cannot be probated at all, at any time, save upon the evidence of three credible witnesses who must agree as to the substance of the words (Mitchell v. Vickers, 20 Tex. 384), and, if the will is not probated within six months, their testimony agreeing as to the substance thereof must be reduced to writing within the six

days. How can there be in that time an agreement as to what the decedent said unless each signs, reads, assents, or agrees to what is written? To hold otherwise would, in effect, be to permit one or two of the required witnesses to testify, long after the expiration of the six days, what the disposition was. Every case or text which we have examined requires a strict compliance with the letter and spirit of the several provisions, and all courts, including our own, look upon them with disfavor. We have found no case, even where it is apparent that no shadow of fraud was present, as may be said of the case at bar, in which there is shown any tendency to relax such strictness of construction. In fact, our courts hold that such construction is carried into the statutes despite any provision calling generally for a liberal construction of laws. Moffett v. Moffett, 67 Tex. 642, 4 S. W. 70.

Counsel for appellees cite Welling v. Owings, 9 Gill (Md.) 467, in support of the trial court's action. The statute construed in the case cited is identical with ours in requiring the testimony of the witnesses to be committed to writing if the will is not probated within six months. That court said:

"It is well known that testaments of this character are, from their nature, not only open to fraud and fabrication, but peculiarly exposed to mistakes in relation to the testator's intention on account of the imperfection and frailty of human memory. * * * It is obvious that accuracy and precision in reference to the words used by the testator is of the greatest importance. * * * And that accuracy might be secured, so far as practicable, in reference to the words used by the testator, we understand the Legislature to have required that these testamentary words, or the substance of them, should be reduced to writing, and should be seen by, and found to be correct, by each of the three attesting witnesses," within the limited period.

Counsel for appellant argues in effect that the requirement that the testimony shall be reduced to writing is an act required to be performed by the witnesses, and that under article 5502, Vernon's Sayles' Tex. Civ. Stats., which permits the exercise of a joint authority by the majority of those upon whom it is conferred, the writing down and agreeing to the nuncupation by two of the required witnesses was sufficient. It is apparent from what we have said that we regard the act of writing down the testimony, the testamentary words, an essential and necessary step towards creating a valid spoken will. If we are correct in that conclusion, the act is readily distinguishable from the exercise of authority conferred in the performance of the various acts and duties ordinarily comprehended in such authority.

The judgment of the trial court we are constrained to believe should be and is hereby affirmed.

Affirmed.